STEVENS v. McCLAUGHRY, Warden of United States Penitentiary.

(Circuit Court of Appeals, Eighth Circuit. July 10, 1913.)

No. 3,879.

*(Syllabus by the Court.)*

1. CRIMINAL LAW (§ 984*)—SENTENCE—DIFFERENT OFFENSES PARTS OF SAME ACT—CONTEMPORANEOUS LARCENY AND LARCENY AND EMBEZZLEMENT.

The sentence of a defendant, convicted under separate counts of an indictment under section 5469, Revised Statutes (U. S. Comp. St. 1901, p. 3692), of larceny of a mail pouch containing registered letters and of letters, and also of larceny of registered letters and embezzlement of their contents, committed at the same time and place and as parts of a continuous criminal act to separate punishments, is beyond the jurisdiction of the court and void as to the excess above the maximum punishment that may be imposed for a single offense; and, after the defendant has satisfied such a sentence, he is entitled to his release by habeas corpus.

Separate offenses which are committed at the same time and are parts of a continuous criminal act, inspired by the same criminal intent which is an essential element of each offense, are susceptible of but one punishment.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 2504–2509, 2541; Dec. Dig. § 984.*]

2. HABEAS CORPUS (§ 30*)—VOID JUDGMENT—ERRONEOUS JUDGMENT—FUNCTION OF WRIT OF ERROR.

The proper federal court may release by writ of habeas corpus one who is being restrained of his liberty for many years by virtue of the judgment of a federal court beyond its jurisdiction and therefore void, but it may not release one so held by virtue of a judgment which is erroneous but within the jurisdiction of the court which rendered it, and hence not void. The writ of habeas corpus is not available to perform the function of a writ of error where the judgment assailed is not void.

[Ed. Note.—For other cases, see Habeas Corpus, Cent. Dig. § 25; Dec. Dig. § 30.*]

3. HABEAS CORPUS (§ 27*)—EXCESS OF JUDGMENT BEYOND JURISDICTION VOID.

The excess of a judgment beyond the jurisdiction of the court which renders it is as void as a judgment without any jurisdiction, and a prisoner held under such excess only is entitled to his release by writ of habeas corpus.

[Ed. Note.—For other cases, see Habeas Corpus, Cent. Dig. § 22; Dec. Dig. § 27.*]

4. HABEAS CORPUS (§ 4*)—FAILURE TO SECURE WRIT OF ERROR IN TIME—EFFECT.

One who is being restrained of his liberty for many years by virtue of the judgment of a federal court which is beyond its jurisdiction and void is not barred from a release therefrom, by writ of habeas corpus,

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

by the fact that he might have secured such relief by a writ of error, but failed to apply for it until it was too late.

[Ed. Note.—For other cases, see Habeas Corpus, Cent. Dig. § 4; Dec. Dig. § 4.*]

Appeal from the District Court of the United States for the District of Kansas; John C. Pollock, Judge.

Petition of Charles A. Stevens, alias Charles Savage, for a writ of habeas corpus, to Robert W. McClaughry, Warden of the United States Penitentiary, at Leavenworth, Kan. From an order denying the petition, petitioner appeals. Reversed and remanded, with directions to discharge petitioner.

Turner W. Bell, of Leavenworth, Kan., for appellant.

Charles S. Briggs, Asst. U. S. Atty., of Topeka, Kan. (H. J. Bone, U. S. Atty., and A. M. Harvey, Asst. U. S. Atty., both of Topeka, Kan., on the brief), for appellee.

Before SANBORN and CARLAND, Circuit Judges, and WILLARD, District Judge.

SANBORN, Circuit Judge. This is an appeal from an order which denied the petition of Charles A. Stevens, alias Charles Savage, for a writ of habeas corpus and a release from the United States penitentiary at Leavenworth, Kan. He was indicted, convicted, and sentenced, under the first two counts of an indictment, to imprisonment for five years under section 5469 of the Revised Statutes (U. S. Comp. St. 1901, p. 3692), for feloniously taking, stealing, and carrying away on June 6, 1908, "from and out of a certain United States mail car lying and being upon a side track at the union depot transfer station for United States mails at Kansas City, Jackson county, Mo., and then and there being the duly authorized depository for registered mail matter, a certain letter pouch containing registered mail, * * * from Los Angeles, Cal., to New York, N. Y., which said pouch contained large quantities of registered mail matter, from United States post office at Los Angeles, Cal., and intended for delivery at United States post office at New York City, N. Y.," and 108 letters and packages which had been lately deposited in the United States mails for mailing and delivery. At the same trial he was convicted and sentenced to an imprisonment for five years more, under section 5469 of the Revised Statutes, under four counts of the same indictment, for feloniously taking, stealing, and carrying away on June 6, 1908, "from and out of a certain United States mail car lying and being upon a side track at the union depot transfer station for United States mails at Kansas City, Mo., and then and there being a duly authorized depository for registered letters, certain mail matter," to wit, four registered letters numbered 96,419, 96,420, 96,421, and 96,422, and feloniously embezzling and converting to his own use the contents thereof. Each of these four letters was thus described in the indictment:

"A certain letter which had theretofore been deposited in the United States post office in Los Angeles, Cal., for mailing and delivery, to wit, registered

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

letter No. 96,419 (or one of the other numbers), of the United States post office at Los Angeles, Cal., mailed and deposited in said post office by the Farmers' & Merchants' National Bank of Los Angeles, Cal., and intended to be conveyed by mail and addressed to and intended for the Importers' & Traders' National Bank of New York City, N. Y., which said letter then and there contained"

—$12,500 lawful money of the United States.

[1] The petitioner served his term of five years under the first two counts of the indictment, and then presented his petition for his release on the ground that all the offenses of which he was convicted constituted a single continuing criminal act, inspired by the same felonious intent, which was equally essential to each of the offenses charged in the indictment, and that the excess of his sentence beyond imprisonment for five years, which was the maximum punishment prescribed by section 5469 for a single offense, was beyond the jurisdiction of the court which sentenced him, and void, under the decision of this court in Munson v. McClaughry, 198 Fed. 72, 75, 76, 117 C. C. A. 180, 42 L. R. A. (N. S.) 302, the decision of the Circuit Court of Appeals of the Ninth Circuit in Halligan v. Wayne, 179 Fed. 112, 102 C. C. A. 410, and the opinions in Re Snow, 120 U. S. 274, 285, 7 Sup. Ct. 556, 30 L. Ed. 658; Hans Nielsen, Petitioner, 131 U. S. 176, 182, 190, 9 Sup. Ct. 672, 33 L. Ed. 118; Kite v. Commonwealth, 11 Metc. (Mass.) 581, 583; Triplett v. Commonwealth, 84 Ky. 193, 1 S. W. 84; Yarborough v. State, 86 Ga. 396, 12 S. E. 650; Commonwealth v. Birdsall, 69 Pa. 482, 485, 8 Am. Rep. 283.

The principle upon which the decisions in these cases rests is that two or more separate offenses which are committed at the same time and are parts of a single continuing criminal act, inspired by the same criminal intent which is essential to each offense, are susceptible to but one punishment. The most familiar illustration of the rule is that burglary with intent to commit larceny and larceny committed at the same time and as one continued act do not subject the perpetrator to two punishments, one for the burglary and another for the larceny, because the same criminal intent is indispensable to each, and they are each parts of a continuing criminal act. In order to take this case out from under this principle, counsel for the government argue that section 5469 denounces several separate offenses, two of which are: (1) Stealing the mail, or any letter or packet from any authorized depository for mail matter; and (2) taking the mail, or any letter or packet, which contains an article of value, from any authorized depository for mail matter, opening and embezzling the contents thereof; that the intent to embezzle is not essential to the former, but is indispensable to the latter offense; that the two offenses are therefore separate. Let all this be conceded. Nevertheless, in the case at bar, the pleader alleged the stealing of the letters in the third, fourth, fifth, and sixth counts of the indictment in the same words in which he alleged the stealing of the letter pouch and the letters in the first and second counts. He averred that the defendant "did unlawfully, and feloniously take, steal, and carry away from and out of a certain United States mail car" the letters whose contents he also

alleged that the defendant embezzled. Conceding, but not admitting, that the United States might have charged and upon conviction have punished the separate offense of taking the four registered letters and embezzling their contents, its averment in the four counts which treat of these letters, of the intent to steal them and of their stealing made that intent an issue under each count and an essential element of each offense charged, and thus brought this case directly under the rule and the authorities cited. In burglary with intent to commit larceny and larceny committed at the same time the intent to break and enter is not essential to the offense of larceny, but the intent to steal is indispensable to each offense. So in the case at hand, the intent to embezzle is not essential to the offense of stealing a mail pouch and the letters, but under this indictment the intent to steal and the stealing is made by the pleadings as indispensable an element of the four offenses charged in the third, fourth, fifth, and sixth counts of the indictment as it is of the offenses charged in the first two counts.

Counsel call attention to the conceded rule that charges of separate offenses of the same class may be joined in separate counts in the same indictment. But this rule and the practice under it does not detract from the soundness or effect of the principle that two or more separate offenses which are committed at the same time and are parts of a continuing criminal act inspired by the same indispensable felonious intent are susceptible of but one punishment. The two offenses in Munson v. McClaughry, 198 Fed. 72, 117 C. C. A. 180, 42 L. R. A. (N. S.) 302, were charged in separate counts of the same indictment, and the situation was the same in Halligan v. Wayne, 179 Fed. 112, 102 C. C. A. 410.

Finally it is said that the record fails to prove that the stealing and carrying away charged in the third, fourth, fifth, and sixth counts of the four registered letters, and the conversion of their contents, was a part of the same continuing act as the stealing and carrying away of the mail pouch and the 108 letters charged in the first and second counts. Let us see. The record is that the defendant was tried and convicted under each of these counts; hence that the charges they contain are true. The first count charges that on June 6, 1908, the defendant, at Kansas City, Mo., took, stole, and carried away—

"from and out of a certain United States mail car lying and being upon a side track at the union depot transfer station for the United States mails at Kansas City, Jackson county, Mo., and then and there being the duly authorized depository for registered mail matter, certain United States mail, to wit, a certain letter pouch containing registered mail, the lock on said pouch being number 2,424, rotary number 311, from Los Angeles, Cal., to New York, N. Y., which said pouch then and there contained large quantities of registered mail matter from United States post office at Los Angeles, Cal., and intended for delivery at United States post office at New York City, N. Y."

Each of the third, fourth, fifth, and sixth counts charged that the defendant on June 6, 1908, at the same time that he took the mail pouch, at Kansas City, Mo., at the same place that he took the mail pouch, feloniously took, stole, and carried away a registered letter "from and out of a certain United States mail car lying and being upon

a side track at the union depot transfer station for United States mails at Kansas City, Mo.," a mail car at the same place and described in the same words as the car from which he took the registered mail pouch, "a certain letter which had lately theretofore been deposited in the United States post office at Los Angeles, Cal., mailed and deposited in said post office by the Farmers' & Merchants' National Bank of Los Angeles, Cal., and intended to be conveyed by mail and addressed to and intended for the Importers' & Traders' National Bank of New York City, N. Y.," such a letter as in the ordinary and almost invariable course of business would be in the letter pouch, and nowhere else, containing registered mail from Los Angeles, Cal., to New York, described in the first count of the indictment.

[3] The averments in each of the counts of this indictment that the six stealings occurred at the same time, at the same place, from a mail car described in each of them in the same words, and that the registered letters described in the third, fourth, fifth, and sixth counts were such as in the usual course of business would have been in the mail pouch containing registered letters from Los Angeles to New York described in the first count, converge upon the mind with such compelling force as to leave no doubt that all these stealings were committed at the same time, were parts of a single continuous criminal transaction, and that they were inspired by the same indispensable felonious intent. This conclusion is in accord with the decision in the Circuit Court of Appeals of the Ninth Circuit in Halligan v. Wayne, 179 Fed. 112, 102 C. C. A. 410, and with the decision of this court in Munson v. McClaughry, 198 Fed. 72, 117 C. C. A. 180, 42 L. R. A. (N. S.) 302, where the fact that a count for burglary with intent to commit larceny charged the commission of the offense at the same time and place as a count for larceny was held sufficient, without more, to satisfy the court that the offenses charged were parts of the same continuous act. The case at bar, therefore, falls within the rule upon which the decisions in these cases are founded. It rests upon the principle that no man shall be twice punished for the same offense, so that when under the first two counts of the indictment the district court had sentenced the petitioner to the maximum punishment fixed by the law, it had exhausted its power, and its second sentence to imprisonment for five years more on the third, fourth, fifth, and sixth counts was in excess of its jurisdiction and void. The excess of a sentence or judgment beyond the jurisdiction of the court which renders it is as void as a judgment without any jurisdiction, and a prisoner held under such excess may be released by writ of habeas corpus. Ex parte Lange, 18 Wall. 163, 176, 178, 21 L. Ed. 872; In re Snow, 120 U. S. 274, 285, 7 Sup. Ct. 556, 30 L. Ed. 658; Hans Nielsen, Petitioner, 131 U. S. 176, 182, 190, 9 Sup. Ct. 672, 33 L. Ed. 118; Mackey v. Miller, 126 Fed. 161, 163, 62 C. C. A. 139, 141; Ex parte Peeke (D. C.) 144 Fed. 1016; Bigelow v. Forrest, 9 Wall. 339, 19 L. Ed. 696; Foltz v. St. Louis & San Francisco Ry. Co., 60 Fed. 316, 320, 8 C. C. A. 635, 639.

Since this case was argued and submitted, however, the Supreme Court has handed down, on May 26, 1913, its opinion in the Matter of the Petitions of Spencer, Scholl, and Moyer, 228 U. S. 652, 33

Sup. Ct. 709, 57 L. Ed. 1010, who had applied for writs of habeas corpus to release them from imprisonment under sentences of a state court requiring them to pay fines and costs and undergo an imprisonment for an indeterminate period, the minimum of which should be 18 months and the maximum two years, upon the ground that when they committed their crimes the maximum imprisonment which could be imposed upon them was two years and the minimum six months, and that the amendment which permitted the sentences imposed was an ex post facto, and unconstitutional law. They had first appealed from their sentences to the Superior Court of Pennsylvania where the judgments had been affirmed. They had then petitioned the Supreme Court of the state for a special allocatur to allow an appeal to that court from the judgment of the Superior Court. The Supreme Court had given the amendment such a construction as rendered it constitutional and valid, and had denied their petition. The petitioners had not raised the constitutionality of the amendment to the law which they sought to challenge in either of the courts of the state, nor had they sought a writ of error to the Supreme Court of the state from the Supreme Court of the United States. They had, however, applied to the United States District Court after their defeats in the state courts for writs of habeas corpus, those applications had been denied, and they were met in the Supreme Court of the United States by the objections that they were too late, and that their claims had been adjudicated in the United States District Court. They had paid their fines and costs, and their contention was that their sentences of imprisonment were void, although it was plain that under any interpretation of the original statutes and the amendment to them their sentences were legal and valid for at least six months of the terms of their imprisonment, and they had not served that much of those terms. The Supreme Court refused to issue the writ of habeas corpus on the ground, among others, that their sentences to imprisonment were not void, but were merely erroneous, and that the national courts in the exercise of their discretion may and should, save in exceptional cases of which that was not one, refuse to interfere by habeas corpus with the course or final administration by the state courts of the criminal justice of their state, and should require the petitioners to present their claims by writs of error, citing Urquhart v. Brown, 205 U. S. 179, 27 Sup. Ct. 459, 51 L. Ed. 760, which rests on the latter ground, and In re Lincoln, 202 U. S. 178, 26 Sup. Ct. 602, 50 L. Ed. 984, which is founded on the rule that the Supreme Court may deny the writ in petty criminal cases where no writ of error has been sought and no application for a writ of habeas corpus has been made to any lower court, although the prisoner is restrained under the judgment of a federal court and there is full jurisdiction to issue the writ. The circumstances in Lincoln's Case were these: The petitioner had been sentenced by the United States District Court to jail for 60 days and to pay a fine of $100, for selling liquor to Indians. His jail sentence had expired. Under the law he could either pay the fine, of which he was complaining, or be discharged within 90 days from February 19, 1906, by taking the poor debtor's oath. The Supreme Court declared

that the case was practically a moot one, for the decision was filed on May 14, 1906, only five days before he could be discharged under the poor debtor's oath; that in Ex parte Mirzan, 119 U. S. 584, 7 Sup. Ct. 341, 30 L. Ed. 513, it had declined to issue a writ of habeas corpus after a conviction, "holding that it might be issued by the proper circuit court, and that application should be made to that court, except in cases where there were some special circumstances making the immediate action by this court necessary or expedient," and it declined to issue the writ, with the concluding remark that "to permit every petty criminal case to be brought directly to this court upon habeas corpus, on the ground of an alleged misconception or disregard of our decisions, would be a grievous waste of our time, which should be devoted to a consideration of the more important legal and constitutional questions which are constantly arising and calling for our consideration." This brief review of Lincoln's Case seems to demonstrate that it is no authority for any claim that a District Court ought not to issue its writs to relieve a prisoner, like the petitioner here, who is otherwise remediless, from an illegal and unconstitutional imprisonment for five years under a void sentence of a federal court, because this decision rules the practice of the Supreme Court only, and not that of the District Court, because it is limited by its facts to a moot and a petty criminal case, and a case which involves one's deprivation of his liberty for five years is not petty, and because in the case in hand the petitioner applied for his writ to a lower court, to which he was directed to apply by the Supreme Court in the Lincoln and Mirzan Cases. Moreover, the Supreme Court calls special attention in that decision to the fact that, even that court had issued the writ and discharged a prisoner although the claim to his discharge could have been and was not litigated by writ of error in Matter of Heff, 197 U. S. 488, 25 Sup. Ct. 506, 49 L. Ed. 848, and that it would do so in a matter involving a question of great significance involving the rights of many. 202 U. S. 178, 183, 26 Sup. Ct. 602, 50 L. Ed. 984. What question is of greater significance, or involves the rights of more persons, than the right to the constitutional immunity from a second punishment for the same offense? Hans Nielsen, Petitioner, 131 U. S. 176, 183, 184, 9 Sup. Ct. 672, 33 L. Ed. 118.

We return to the cases of Spencer and others. The opinion in that case sets forth the facts that by writ of error to the Superior Court of Pennsylvania and by petition to the Supreme Court of that state the petitioners had challenged the sentence of which they complain, and had not in either case raised, as they might have done, the issue that it was based on an ex post facto law; that they had applied to the United States District Court for a writ of habeas corpus on that ground, and their application had been denied; that their sentence was in any event valid for six months of their terms, and those six months had not expired, and after reciting all these facts it reviewed the opinion in Ex parte Lange, 18 Wall. 163, 21 L. Ed. 872, where a prisoner was relieved of a void sentence by writ of habeas corpus from the Supreme Court, and distinguished the cases of Spencer and others from that case on the ground that their sentences were erroneous but.

not void, while the sentence in the Lange Case was void, invoked the rule that a writ of habeas corpus may not be used to perform the function of a writ of error, called attention to the fact that the amendment to the statute which was claimed to be ex post facto had been so construed by the Supreme Court of Pennsylvania as to have no ex post facto effect, and then because the application was too late, coming after a decision of a like application by the United States District Court and after reviews by the state courts, because the statute challenged had been construed by the State Supreme Court to be harmless and because the sentence assailed was erroneous but not void, it refused to issue the writ. In the course of the opinion the Supreme Court called attention sharply to the fact that the sentences of the petitioners were subject to review and modification by the Supreme Court of Pennsylvania, and that no application therefor on the ground that the amendment to the law was ex post facto had been made to that court. This portion of the opinion suggests two questions: Did the Supreme Court hold or intend to hold by its decision in these cases, or in the Lincoln Case, that a United States District Court may not and ought not, in any case, to issue a writ of habeas corpus and release a person otherwise remediless, who is being restrained of his liberty by virtue of a judgment of a federal court beyond its jurisdiction, where he might have obtained his release by a writ of error, but failed to do so until it was too late, and, if not, does the case in hand fall within the class of cases in which such a writ may and should issue? The Circuit Court of Appeals of the Fifth Circuit seems to have been of the opinion that the first of these questions should be answered in the affirmative. Moyer v. Anderson, 203 Fed. 881. After a careful consideration of the purpose and effect of the right to the writ of habeas corpus, and of the rules and practice which govern it, it has been found difficult for us to reach that conclusion. In deference to the profound learning, commanding ability, and long experience of the eminent jurists who occupy the bench in that circuit, and to the high authority of that court, it has seemed proper to state the reasons which have forced us to a different conclusion.

The judgment in the case at bar was rendered by a national court, and the cogent reasons against interference by the federal courts with the administration of justice in the state courts are inapplicable here. Ex parte Royall, 117 U. S. 254, 6 Sup. Ct. 742, 29 L. Ed. 872; In re Dowd (C. C.) 133 Fed. 747, 754; In re Lincoln, 202 U. S. 178, 182, 26 Sup. Ct. 602, 50 L. Ed. 984. While it is a conceded rule that a writ of habeas corpus may not be used as a mere writ of error, it has been an established principle of our national jurisprudence for many years that one restrained of his liberty by virtue of a judgment or order of a court which that court had no jurisdiction to make might be released by the writ of habeas corpus, whether such a release could have been secured by writ of error or not. Ex parte Lange, 18 Wall. 163, 169, 173, 21 L. Ed. 872; Ex parte Heff, 197 U. S. 488, 508, 509, 25 Sup. Ct. 506, 49 L. Ed. 848; Ex parte Bridges, 4 Fed. Cas. 98, 104; Ex parte Wilson, 114 U. S. 417, 422, 429, 5 Sup. Ct. 935, 29 L. Ed. 89; In re Snow, 120 U. S. 274, 285, 7 Sup. Ct. 556, 30 L. Ed. 658; Ex parte Bain, 121 U. S. 1, 13, 14, 7 Sup. Ct. 781, 30 L. Ed.

849; Hans Nielsen, Petitioner, 131 U. S. 176, 182, 190, 9 Sup. Ct. 672, 33 L. Ed. 118. The cases of Spencer and others questioned a judgment of a state court imposing a sentence of imprisonment for an indeterminate period the minimum of which should be 18 months and the maximum two years, on the ground that there was no law, except an ex post facto law, which authorized an imprisonment for more than six months. The petitioners had not served six months. The judgments under which they were restrained were not void because the court had jurisdiction to sentence them for six months. Moreover, their validity depended upon the construction of statutes of the state which its courts on writs of error had construed against them, so that the judgment challenged was an erroneous and not a void judgment, and the writ of habeas corpus was not available under the rule of Hans Nielsen, Petitioner, 131 U. S. 176, 183, 184, 9 Sup. Ct. 672, 33 L. Ed. 118.

On the other hand, the case at bar is one in which the trial court had jurisdiction to sentence the petitioner, for all the offenses with which he was charged to an imprisonment for five years and no longer. It imposed that sentence, thereby exhausting its power to sentence him to imprisonment, and then without jurisdiction sentenced him to an imprisonment for another five years. The second sentence alone is challenged; no part of it is valid; he did not seek to reverse it by writ of error, and his time to apply for such a writ has expired. Is he barred from all relief? In Ex parte Lange, 18 Wall. 163, 169, 173 [21 L. Ed. 872], the petitioner had been tried, convicted, and sentenced for an offense for which he was liable to the alternative punishment of fine or imprisonment. The court imposed both. He paid the fine, and made application to the same court by writ of habeas corpus for release on the ground that he was then entitled to a discharge. The circuit court set aside its judgment and sentenced him to imprisonment only. He then applied to the Supreme Court by writ of habeas corpus for his release. Mr. Justice Miller delivered the opinion of the court and, among other things, he said:

"If there is anything settled in the jurisprudence of England and America, it is that no man can be twice lawfully punished for the same offense. And though there have been nice questions in the application of this rule to cases in which the act charged was such as to come within the definition of more than one statutory offense, or to bring the party within the jurisdiction of more than one court, there has never been any doubt of its entire and complete protection of the party when a second punishment is proposed in the same court, on the same facts, for the same statutory offense. * * * But it has been said that, conceding all this, the judgment under which the prisoner is now held is erroneous, but not void; and as this court, cannot review that judgment for error, it can discharge the prisoner only when it is void. But we do not concede the major premise in this argument. A judgment may be erroneous and not void, and it may be erroneous because it is void. The distinctions between void and merely voidable judgments, are very nice, and they may fall under the one class or the other as they are regarded for different purposes. We are of opinion that when the prisoner, as in this case, by reason of a valid judgment, had fully suffered one of the alternative punishments to which alone the law subjected him, the power of the court to punish further was gone; that the principle we have discussed then interposed its shield, and forbid that he should be punished again for that offense. The record of the court's proceedings, at the moment

the second sentence was rendered, showed that in that very case, and for that very offense, the prisoner had fully performed, completed, and endured one of the alternative punishments which the law prescribed for that offense, and had suffered five days' imprisonment on account of the other. It thus showed the court that its power to punish for that offense was at an end. Unless the whole doctrine of our system of jurisprudence, both of the Constitution and the common law, for the protection of personal rights in that regard, are a nullity, the authority of the court to punish the prisoner was gone. The power was exhausted; its further exercise was prohibited. It was error, but it was error because the power to render any further judgment did not exist."

And the court discharged the prisoner.

In re Bridges, 4 Fed. Cas. 98, 105, No. 1862, the petitioner had been tried, convicted, and sentenced for perjury by a state court without jurisdiction of the subject-matter. He prayed a writ of habeas corpus and a discharge. Mr. Justice Bradley said:

"It is contended, however, that where a defendant has been regularly indicted, tried, and convicted in a state court, his only remedy is to carry the judgment to the court of last resort, and thence by writ of error to the Supreme Court of the United States, and that it is too late for a habeas corpus to issue from a federal court in such a case. This might be so if the proceeding in the state court were merely erroneous; but where it is void for want of jurisdiction, habeas corpus will lie, and may be issued by any court or judge invested with supervisory jurisdiction in such case."

In Ex parte Wilson, 114 U. S. 417, 422, 429, 5 Sup. Ct. 935, 29 L. Ed. 89, a prisoner, convicted and sentenced to imprisonment at hard labor on a trial upon an information, sought release by writ of habeas corpus because he had never been indicted or presented by the grand jury, and the Supreme Court granted his release although the question raised by the petition had not been urged at the trial.

In Ex parte Bain, 121 U. S. 1, 13, 14, 7 Sup. Ct. 781, 30 L. Ed. 849, the prisoner had been tried, convicted, and sentenced to imprisonment on an indictment which the court had amended before the trial. He prayed a writ of habeas corpus and a discharge. The Supreme Court held that the trial court lost its power to try him by the amendment and discharged him.

In re Snow, 120 U. S. 274, 285, 7 Sup. Ct. 556, 30 L. Ed. 658, section 3 of the Acts of Congress of March 22, 1882, c. 47, 22 Stat. 31, provided that if any male person in a territory of the United States should cohabit with more than one woman, he should, on conviction thereof, be punished by a fine of not more than $300, or by imprisonment for not more than six months, or by both said punishments. On December 5, 1885, three indictments were found against Snow, the first for continuously living and cohabiting with seven women named as his wives, between December 31, 1882, and December 31, 1883, the second for continuously claiming, living and cohabiting with the same women as his wives between January 1, 1884, and December 1, 1884, and the third for continuously living and cohabiting with the same women between the first day of January, 1885, and the first day of December, 1885. There was a separate trial and conviction on each indictment. After the verdicts had been rendered, the court sentenced Snow on the same day to pay a fine of $300 and to imprison-

ment for six months on each indictment. After serving six months and paying a fine of $300 Snow prayed the trial court for a writ of habeas corpus and a release from further imprisonment, on the ground that the offenses charged in all the indictments constituted a single continuous offense, that the court had been without jurisdiction to impose more than one punishment therefor, and that the sentences on the second and third indictments were void. The district court denied the application, and the petitioner appealed to the Supreme Court. That court sustained the claim of the petitioner, held that the acts charged in the three indictments constitued one continuous criminal act, and said:

"Not only had the court which tried them no jurisdiction to inflict a punishment in respect of more than one of the convictions, but, as the want of jurisdiction appears on the face of the judgment, the objection may be taken on habeas corpus, when the sentence on more than one of the convictions is sought to be enforced"

—reversed the court below and ordered the issue of the writ.

In Hans Nielsen, Petitioner, 131 U. S. 176, 182, 190, 9 Sup. Ct. 672, 674 (33 L. Ed. 118), another case with parallel facts is reported. To the objection that the validity of the second sentence could not be assailed by writ of habeas corpus, Mr. Justice Bradley replied:

"It is firmly established that if the court which renders a judgment has not jurisdiction to render it, either because the proceedings, or the law under which they are taken, are unconstitutional, or for any other reason, the judgment is void and may be questioned collaterally, and a defendant who is imprisoned under and by virtue of it may be discharged from custody on habeas corpus. * * * It was laid down by this court In re Coy, 127 U. S. 731, 758 [8 Sup. Ct. 1263, 1272, 32 L. Ed. 274], that the power of Congress to pass a statute under which a prisoner is held in custody may be inquired into under a writ of habeas corpus as affecting the jurisdiction of the court which ordered his imprisonment; and the court, speaking by Mr. Justice Miller, adds: 'And if their want of power appears on the face of the record of his condemnation, whether in the indictment or elsewhere, the court which has authority to issue the writ is bound to release him.' * * * It is difficult to see why a conviction and punishment under an unconstitutional law is more violative of a person's constitutional rights than an unconstitutional conviction and punishment under a valid law. In the first case, it is true, the court has no authority to take cognizance of the case; but, in the other, it has no authority to render judgment against the defendant. This was the case in Ex parte Lange, where the court had authority to hear and determine the case, but we held that it had no authority to give the judgment it did. It was the same in the case of Snow: The court had authority over the case, but we held that it had no authority to give judgment against the prisoner. He was protected by a constitutional provision, securing to him a fundamental right. It was not a case of mere error in law, but a case of denying to a person a constitutional right. And where such a case appears on the record, the party is entitled to be discharged from imprisonment."

[2] And here is the true distinction between the cases in which the writ of habeas corpus may and those in which it may not issue. If the judgment or sentence challenged is without the jurisdiction of the court and void, the writ may issue. If it is erroneous, but within the jurisdiction of the court which rendered it, the writ may not issue. The parallel between the cases of Snow and Nielsen and the case at bar is complete, and unless the decision in the case of Spencer and

others has overruled the cases which have just been reviewed, and departed from the fundamental principles they sustain and the practice under them which has prevailed for years in In re Mayfield, 141 U. S. 107, 116, 11 Sup. Ct. 939, 35 L. Ed. 635; In re Ladd (C. C.) 74 Fed. 31, 42; In re Waite (D. C.) 81 Fed. 359, 362, 372; Mackey v. Miller, 126 Fed. 161, 163, 62 C. C. A. 139; Ex parte Peeke (D. C.) 144 Fed. 1016—there would seem to be no doubt of the power or duty of the court to issue the writ in the case in hand. We are not persuaded that it has overruled them, departed from the rules they maintain, or decided that every one restrained of his liberty by a void judgment which he might have challenged by a writ of error, is barred of relief by means of the writ of habeas corpus. It has not expressly declared that those decisions are wrong, or that the principles on which they rest are erroneous, and they are too firmly established to be overthrown by silence. On the other hand, it has carefully distinguished the leading case, the Lange Case, from those in which its opinion was delivered, and to hold that one who is being deprived of his liberty for a long term of years by virtue of a sentence beyond the jurisdiction of the court which rendered it has deprived himself of his right to relief by writ of habeas corpus because through ignorance, poverty, or neglect he failed to challenge that judgment by writ of error until it was too late is to rob the writ of the very purpose of its existence, the purpose to afford speedy and inexpensive relief from unlawful imprisonment to those otherwise remediless. To us it is incredible that the Supreme Court ever intended to decide, to take the striking illustrations of Mr. Justice Miller in Ex parte Lange, 18 Wall. at page 176, 21 L. Ed. 872, that one who should be sentenced by a justice of the peace having jurisdiction to fine for a misdemeanor, or by a court of general jurisdiction on an indictment for a libel, to imprisonment and death, who through ignorance or neglect should fail to appeal or procure a writ of error within the prescribed time, would be barred of relief by the writ of habeas corpus. It is a writ of right. The acts of Congress declare that the court to which the application for it is made "shall forthwith award a writ of habeas corpus, unless it appears from the petition itself that the party is not entitled thereto," and "shall proceed in a summary way to determine the facts of the case, * * * and thereupon to dispose of the party as law and justice require." Revised Statutes, §§ 755, 761. The petitioner is being restrained of his liberty for five years by a judgment of a federal court which was beyond its jurisdiction and void.

[4] And our conclusion is that one who is being restrained of his liberty for many years by virtue of the judgment of a federal court which is beyond its jurisdiction and void may, and should, be relieved from that restraint by the proper federal court by means of the writ of habeas corpus, and that he is not barred from such relief by the fact that he might have obtained it by a writ of error, but failed to do so until it was too late. The case at bar falls under the rule we have announced and within the class of cases governed by it, and the court below should have issued the writ and discharged the prisoner. The order denying the petition for the writ of habeas corpus and for

the release of the petitioner from the penitentiary is accordingly reversed, and the case is remanded to the District Court, with directions to discharge the prisoner.